**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4105

SERGIO GONZALEZ,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4153

LETICIA HERNANDEZ-CASTRO,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-97-264)

Submitted: July 7, 1998

Decided: August 28, 1998

Before MICHAEL and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Marvin D. Miller, Alexandria, Virginia; Jeffrey D. Zimmerman, Frank Salvato, Alexandria, Virginia, for Appellants. Helen F. Fahey, United States Attorney, Robert A. Spencer, Assistant United States Attorney, Thomas G. Connolly, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In these consolidated appeals, Sergio Gonzalez and Leticia Hernandez-Castro appeal their convictions and sentences on one count of conspiracy to transport illegal aliens in violation of 18 U.S.C. § 371 (1994) and seven counts of transporting illegal aliens in violation of 8 U.S.C.A. § 1324(a)(1)(A)(ii) (West Supp. 1998) and 18 U.S.C. § 2 (1994). Both Appellants worked for a Houston, Texas company which transported illegal aliens by vans to locations across the country for the purpose of working as laborers. The business was owned by Hernandez-Castro's brother-in-law. Hernandez-Castro was responsible for managing the office. Contractors would call the Houston office, speak to Hernandez-Castro, and place orders for a number of laborers. She was also responsible for paying the many van drivers who worked for the business. Gonzalez was responsible for picking up illegal aliens from homes in the Houston area and bringing them back to the office. He also paid the "coyotes" who recruited the illegal aliens. Both Appellants instructed van drivers on what roads to take and how to manage their passengers at rest-stops in order to evade immigration officials and Border Patrol.

On appeal, Appellants challenge the effectiveness of their counsel due to counsels' joint representation. Appellants also contend the

2

court erred in failing to make an inquiry regarding the joint representation as required under the Sixth Amendment and Fed. R. Crim. P. 44(c). Finally, Appellants challenge enhancements to their offense levels. Finding no reversible error, we affirm.

For arraignment, all pre-trial matters, trial and sentencing, Appellants, who are husband and wife, were jointly represented by both members of the law firm of Cavazos & Higgins. Appellants now contend that they received ineffective assistance of counsel because their attorneys were burdened by an actual conflict of interest and the court failed to take appropriate measures to protect each Appellant's right to conflict-free representation.

Appellants can raise the claim of ineffective assistance of counsel on direct appeal "if and only if it conclusively appears from the record that [their counsel] did not provide effective assistance." United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998) (citing United States v. Smith, 62 F.3d 641, 650-51 (4th Cir. 1995)), cert. denied, ___ U.S. ___, 1998 WL 289709 (U.S. June 26, 1998) (Nos. 97-9399, 97-9221). Generally, this issue is better suited for a motion under 28 U.S.C.A. § 2255 (West 1994 & Supp. 1998), because Appellants would be able to establish a more detailed record and the attorneys would be afforded an opportunity to explain their actions. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Joint representation is not a per se violation of the Sixth Amendment right to effective assistance of counsel. See Holloway v. Arkansas, 435 U.S. 475, 482 (1978). In order to succeed on this claim, Appellants must show the existence of an actual conflict of interest. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). We find the record before us does not demonstrate such a conflict. Appellants put forth a unified defense. Appellate counsel suggest numerous examples of possible conflict of interests; however, none of the suggestions are sufficiently supported by the record. [1] Thus, because it

_____

[1] For instance, appellate counsel contend that defense counsel were prevented from exploring possible plea negotiations due to their joint representation. There is nothing in the record to support this contention. There is nothing to show that either Appellant was interested in entering plea

3

does not conclusively appear from the record that either Appellant received ineffective assistance of counsel, this claim should be raised in a § 2255 motion.

Appellants also contend that the court erred in failing to inquire regarding the joint representation in violation of both the Sixth Amendment and Fed. R. Crim. P. 44(c). Under the Sixth Amendment, courts are not required in all instances to inquire into the appropriateness of joint representation. Rather, courts are permitted to assume that joint representation is conflict-free, absent some indication of a conflict. See Cuyler, 446 U.S. at 346-47; see also Gilliam, 975 F.2d at 1053. Joint representation may be part of a strategic choice. See Cuyler, 446 U.S. at 348. Likewise, Appellants' Rule 44(c) argument does not warrant a reversal in this case. Although the district court did not follow Rule 44(c)'s clear mandate to "promptly inquire" into every joint representation, see Fed. R. Crim. P. 44(c), this omission is not, in itself, reversible error when the issue of a conflict was never brought to the attention of the court. See United States v. Arias, 678 F.2d 1202, 1205 (4th Cir. 1982); see also Gilliam, 975 F.2d at 1054 (district court must hold Rule 44(c) hearing even if issue of conflict is raised at sentencing). When a defendant fails to raise this issue at all in district court, the court's failure to conduct a Rule 44(c) hearing constitutes reversible error when the defendant can demonstrate that an actual conflict of interest did exist, see Gilliam, 975 F.2d 1053-54. Yet, as we have previously stated, the record does not show evidence of a conflict. Therefore, the court's failure to inquire regarding the joint representation does not constitute reversible error.

Appellant Hernandez-Castro contends that the court erred in applying a four-level upward adjustment to her offense level for being an "organizer or leader" under U.S. Sentencing Guidelines Manual § 3B1.1(a) (1997).[2] We review role-in-the-offense adjustments for

_____

negotiations. See, e.g., United States v. Gilliam, 975 F.2d 1050, 1054 (4th Cir. 1992) (possible actual conflict shown when defendants, represented by same counsel, were divided on the issue of accepting a plea agreement). Since both Appellants maintained their innocence throughout the trial, it is just as likely, based on the record before us, that neither Appellant desired to plead guilty to any offense.

[2] Under USSG § 3B1.1(a), a defendant's offense level may be increased four levels if the court finds the defendant was an organizer or

4

clear error. See United States v. Perkins, 108 F.3d 512, 518 (4th Cir. 1997). We find there was no clear error. Hernandez-Castro managed the Houston office, which employed twenty to thirty drivers and used twenty to twenty-five vans. She took orders from contractors and dispatched drivers to locations across the country. She gave instructions to the drivers and paid them once the job was complete. The fact that she may have reported to her brother-in-law for instructions does not necessarily mean that she was not eligible for the increase as an organizer and leader. The commentary to § 3B1.1 states that there can be more than one person who qualifies as an organizer or leader.

Likewise, the court did not clearly err in assigning Appellant Gonzalez a three-level adjustment for his role in the offense as a "manager or supervisor" under § 3B1.1(b). Gonzalez attributes this error in large part to counsels' failure to develop his role due to their alleged conflict. As already stated, there is no evidence of a conflict. On the other hand, there was sufficient evidence for the court to make its determination regarding his role in the offense. Gonzalez was responsible for instructing van drivers, picking up illegal immigrants, and dealing with the "coyotes."

Gonzalez also contends that the court erred in enhancing his offense level two levels for obstruction of justice based upon a threat he made to a Government witness as the witness was exiting the courtroom after completing his testimony. The Government prosecutor informed the court of the threat later that same day after the lunch break. The court denied the Government's request to recall the witness, but instructed defense counsel to caution Gonzalez. Gonzalez contends the court erred at sentencing in making this two-level adjustment because the obstruction was not shown by a preponderance of the evidence. According to Gonzalez, the only evidence of the threat was the Government prosecutor's statement regarding what he had been told by a Government witness. Defense counsel stated at sentencing that he was sitting at the defense table when the alleged threat was made and did not hear any threat.

_____

leader of a criminal activity that involved five or more participants or was otherwise extensive.

5

Under USSG § 3C1.1, an offense level may be increased two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Application Note 3 states that the increase is warranted if the defendant threatened, intimidated or otherwise unlawfully influenced a witness. We review the court's finding that Gonzalez obstructed justice for clear error. See United States v. Puckett, 61 F.3d 1092, 1095 (4th Cir. 1995).

Again, we conclude there is no clear error. Evidence of the threat was provided to the court soon after it was delivered. Furthermore, the Government was willing to provide testimony of the threat. It is not surprising that defense counsel may not have heard the threat in spite of his location to Gonzalez at the time the threat was made. Quite likely, Gonzalez had no intent of having anyone hear his threat other than the Government witness. Furthermore, counsel was more than likely focused on the trial and the Government's next witness.

Based on the foregoing, we affirm the Appellants' convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

6